NELLIE F. COCHRAN *vs.* BURNHAM D. BARTON.
SAME *vs.* EMMA V. GREENLAW.

Suffolk. March 10, 1919. — June 17, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Of one controlling real estate, Snow and ice. *Snow and Ice.*

In an action against the person in control of a house and the surrounding land on a public street in a suburb of Boston, for personal injuries alleged to have been sustained on a day in January from falling on ice alleged to have been formed by water coming from a conductor on the premises of the defendant, it could have been found that the defendant's house was on an embankment about four feet above the grade of the sidewalk, that at the corner of the roof of a piazza of the house was a spout and that from its base extended a wooden trough parallel to the sidewalk and about twelve feet distant from it, measuring on the slope of the embankment. There was evidence that the ice on which the plaintiff slipped was formed from water that came from this trough. *Held,* that the plaintiff was entitled to go to the jury, the fact, that the water that was poured from the spout fell, not upon the sidewalk, but upon the sloping bank some feet back from the street, not being conclusive against the plaintiff.

TWO ACTIONS OF TORT, one against the lessee and the other against the owner and lessor of a dwelling house and the surround-

ing land in the part of Boston called Forest Hills, for personal injuries sustained on January 25, 1917, caused by slipping and falling upon ice on the sidewalk of Wenham Street, a public highway, formed by water alleged to have come from conductors on the premises of the defendants. Writs dated respectively March 16 and March 31, 1917.

In the Superior Court the cases were tried together before *Raymond*, J. The plaintiff contended that the ice was formed by water which came from the roof of the piazza through a conductor and trough and flowed across the lawn to the sidewalk where it froze. The defendants contended that the condition of the sidewalk was due to natural causes for which they were not responsible. No question was raised as to the propriety of the notice given by the plaintiff to each of the defendants nor was any question intended to be raised as to the respective duties or liabilities of the landlord and the tenant. The material facts that could have been found in support of the plaintiff's contention are stated in the opinion.

At the close of all the evidence, the defendants filed a motion that a verdict be ordered for the defendants. The judge thereupon ordered a verdict for each of the defendants, basing his decision upon the fact that there was no evidence whatever of any artificial channel that came nearer than twelve feet to the street either way, and ruled that upon all the evidence the plaintiff had not made out a case. By agreement of the parties he reported the cases for determination by this court, with the stipulation that, if his ordering of the verdicts and his rulings were right, judgments should be entered for the defendants upon the verdicts. If the cases should have been submitted to the jury, judgments were to be entered for the plaintiff in the sum of $400 and it was agreed as follows: "The question of the liability of one of the defendants, and the lack of liability of the other defendant, is not intended to be raised by this report. And, if the evidence shows that the cases should have been submitted to the jury as against either or both of the defendants, then judgments are to be entered for the plaintiff in the sum of $400 against both defendants, the plaintiff being entitled to but one satisfaction of judgment in the two cases."

The ordinance of the city of Boston, contained in the Revised Ordinances of 1914, c. 40, § 17, which was introduced in evidence

by the plaintiff, subject to the exception of each of the defendants, was as follows: "No owner or occupant of a building or of land shall suffer sewage or waste or stagnant water to remain in such building or upon such land. No owner or occupant of land abutting on a private passageway and having the right to use such passageway shall suffer any filth, waste, or stagnant water to remain on that part of the passageway adjoining such land. No person shall discharge any waste water or water from a sink or water-closet, except through a drain into a sewer or cesspool or in accordance with a permit from the board of health."

*G. H. McDermott,* (*J. M. Fowler* with him,) for the plaintiff.

*C. H. McIntyre,* (*G. W. Abele* with him,) for the defendants.

DE COURCY, J. The plaintiff slipped and fell upon the ice while walking on the easterly sidewalk of Wenham Street, Boston, in front of premises of which the defendant Greenlaw was owner and the defendant Barton was lessee. The plaintiff's due care apparently is not in dispute; no question was raised as to the sufficiency of the statutory notice; and it is stipulated in the report that the plaintiff is to have judgment if the evidence entitled her to go to the jury as against either or both of the defendants.

The principle of law on which the plaintiff bases her claim is the familiar one, that a landowner who collects surface water into an artificial channel, such as a spout, and discharges it upon a public way, where it freezes and makes the use of the way dangerous, is the efficient cause in creating a public nuisance, and is liable for damage resulting therefrom to a traveller using due care. *Hynes* v. *Brewer,* 194 Mass. 435. *Field* v. *Gowdy,* 199 Mass. 568. *Drake* v. *Taylor,* 203 Mass. 528. *Marston* v. *Phipps,* 209 Mass. 552.

In support of the plaintiff's contention there was evidence from which the jury could find the following facts: The land of the defendants has a frontage of forty-five feet on Wenham Street, and there is a drop of three feet in the grade from the southerly end, at Sunset Avenue, to the northerly end of the lot. The house is on an embankment about four feet above the grade of the sidewalk. At the southwesterly corner of the piazza roof is a conductor, and from its base a V-shaped wooden trough extends parallel with and to a point about twelve feet distant from the sidewalk

of Wenham Street, measuring on the slope of the embankment. There was no ice on the sidewalk at noon, but in the evening there was a strip or ridge of rough ice about fifteen feet in length, and from six inches to two feet wide. It began at the foot of the bank, and widened as it went down hill. There was also ice on the bank, extending from this ridge on the sidewalk all the way up to the "drain pipe."

In our opinion the evidence entitled the plaintiff to go to the jury on her contention that the ridge of ice on the sidewalk was formed by water which was collected in the conductor. The fact that it was poured from the spout, not directly upon the sidewalk but upon the sloping bank some feet back from the street is not conclusive against the plaintiff. In *Field* v. *Gowdy, supra,* one of the spouts was about eleven feet from the street line. It is true that there the water reached the way over a concrete walk, while here it followed the natural grade of the embankment. But it is equally a question of fact for the jury whether the plaintiff connected the ice on the sidewalk with the water poured from the conductor. In view of this conclusion we do not find it necessary to consider the admissibility and effect of Revised Ordinances; c. 40, § 17, dealing with the discharge of waste water.

It follows that, in accordance with the terms of the report, "judgments are to be entered for the plaintiff in the sum of $400 against both defendants, the plaintiff being entitled to but one satisfaction of judgment in the two cases."

*Ordered accordingly.*