## NICOLO SICILIANO *vs.* GIACINTO BARBUTO.

Berkshire.    September 18, 1928. — January 2, 1929.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Pleading and Practice*, Decree, Appeal.  *Equity Jurisdiction,* To enjoin continuing trespass.  *Trespass.  Water.  Damages,* In suit in equity.

An order for a final decree was entered in a suit in equity in the Superior Court, from which an appeal to this court was taken in May, 1928. Subsequently a final decree was entered but no specific appeal was taken therefrom.  Before the entry of the final decree, the appellant sent to the clerk a letter requesting him to furnish an estimate of the cost of preparing the papers for appeal; and, after the entry of the final decree, and after receiving from the clerk a letter stating the estimated cost, the appellant furnished a check for the required sum, stating in a covering letter to the clerk that the money was sent "to cover expense of printing the record for the appeal brought by me." Copies of such letters were included in a printed document before this court entitled "Respondent's Appeal."    *Held,* that

(1) The only appeal taken was from the order for a final decree; the letter to the clerk enclosing the check could not be considered an appeal from the final decree;

(2) The order for a final decree was an order "decisive of" the suit within the meaning of G. L. c. 231, § 96, made applicable to suits in equity by § 144, from which the appellant was entitled to appeal; and, since the suit was "in all other respects ripe for final disposition by the Superior Court," it properly was before this court upon the appeal from such order.

It *was assumed* that the letters above described might be considered by this court.

In a suit in equity by a landowner against the owner of the adjoining land, a master found that the defendant's land was somewhat higher than the plaintiff's; that, because of the maintenance by the defendant of buildings upon his land in part without eaves troughs on the roofs, and by means of eaves troughs in other parts of the buildings, water was deposited either directly upon the plaintiff's land or upon the defendant's land near the boundary line, whence it flowed or seeped with the natural slope of the ground onto the plaintiff's land and into the cellars of his houses; that the larger part of the water in those cellars was deposited there in that manner, the remainder being deposited through the natural fall of rain or snow upon the plaintiff's land; and that an expenditure of a certain sum by the plaintiff would be necessary to put

his houses in proper repair. There was entered an order for a final decree enjoining the defendant from causing water to enter the plaintiff's land and ordering him to pay the plaintiff damages in the sum specified by the master. *Held*, that

(1) The plaintiff suffered damage from tortious acts of the defendant for which he was entitled to relief;

(2) No error appeared in the assessment of damages;

(3) The order for the final decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on January 25, 1928.

The suit was referred to a master. The bill, material facts found by the master, an order for a decree by *Burns*, J., decrees entered, and proceedings relative to an appeal by the defendant and an exception by the plaintiff, are described in the opinion. Copies of letters therein referred to between the defendant and the clerk were included in a printed document before the full court entitled "Respondent's Appeal."

The master also found that "An expenditure of $500 will put . . . [the plaintiff's property] in a good state of repair." The order for a final decree mentioned in the opinion directed that a decree be prepared "(1) perpetually enjoining the defendant from maintaining any portion of his retaining wall upon plaintiff's land or permitting same to overhang plaintiff's land; (2) perpetually enjoining the defendant from maintaining any part of the eaves of his roof so near to plaintiff's land that the drip from said eaves or snow and ice sliding off of said roof will fall on petitioner's land; (3) perpetually enjoining the defendant from depositing rain waters or waters caused by the melting of snow and ice that are collected in eaves troughs and conductors attached to his dwelling house, upon his land in such a way and manner that the said waters will run in a stream onto plaintiff's land. The defendant is ordered to pay the plaintiff's damages in the sum of $500."

*E. D. Getman*, for the plaintiff, submitted a brief.

*J. N. Alberti*, (*C. R. Alberti* with him,) for the defendant.

RUGG, C.J. The plaintiff seeks to restrain the defendant from collecting and turning surface water upon the land of the plaintiff, from maintaining the eaves of his roof so that the drip, and snow and ice sliding therefrom, will fall upon the

plaintiff's land, and from maintaining any part of his retaining wall so as to overhang the plaintiff's land; and prays for the assessment of damages already suffered from these infractions by the defendant of the rights of the plaintiff. The case was referred to a master. There were no exceptions to his comprehensive report, which supported in the main the allegations of the plaintiff's bill. In the absence of a full report of the evidence, these findings must be accepted as true and must be the basis of the final decree, unless on their face they are inconsistent, or contradictory, or substantially incomplete as to essential issues. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Tripp* v. *National Shawmut Bank,* 263 Mass. 505, 511. *DeVeer* v. *Pierson,* 222 Mass. 167, 175.

An interlocutory decree was entered confirming the master's report. Thereafter, on May 9, 1928, an order was entered for a final decree specifying its terms in adequate detail. Seven days later, on May 16, 1928, an appeal from this order was filed by the defendant. Three days after that, on May 19, 1928, a final decree was entered conforming to the terms of the order. No appeal has been taken from that decree.

It is contended by the defendant that facts exist which are the equivalent of such appeal. These facts are that the counsel of record for the defendant wrote to the clerk of courts a letter dated May 17, 1928, received on the following day, asking for an estimate of the expense of preparing the papers for appeal, "so that I may forward to you this amount." Reply conveying the requested information was sent on May 21, 1928. The defendant himself, on June 6, 1928, sent to the clerk of courts a check for the stated sum, together with a letter referring to the case by name and saying that the money was sent "to cover expense of printing the record for the appeal brought by me."

It is assumed in favor of the defendant, but without so deciding, that these letters, although not embodied in a report made by the judge or in the bill of exceptions, may be considered. See "General Rule as to the Records of the Supreme Judicial and the Superior Courts", §§ 4, 7, 11, printed on pages 60, 61, 64 of 1926 Rules of the Supreme

Judicial Court and in 252 Mass. 613, 614, 615.   See *Norton* v. *Musterole Co. Inc.* 235 Mass. 587, 589; *Montague* v. *Silsbee,* 218 Mass. 107, 111; *Reno* v. *Cotter,* 236 Mass. 556, 561; *Churchill* v. *Churchill,* 239 Mass. 443, 445; *Pizer* v. *Hunt,* 253 Mass. 321, 326.

It is plain that the only appeal taken by the defendant was from the order and not from the final decree.   The letter of the defendant to the clerk of courts enclosing a check cannot be treated as an appeal from the final decree.   It is neither in form nor in substance an appeal from the final decree.   It refers in specific terms to "the appeal brought by me."   The only appeal susceptible of being so described is the appeal filed on May 16 from the order for a final decree. That was the only appeal ever "brought" or filed by the defendant.   It could not apply to a final decree entered on a later date.   *Martin's Case,* 231 Mass. 402, 403.

The plaintiff on June 29, 1928, filed a motion to dismiss the defendant's appeal from the order for a final decree on the ground that the defendant had failed to enter and prosecute an appeal from the final decree.   A decree was entered denying this motion.   The plaintiff excepted to the denial of this motion.   The question thus is raised whether the case is rightly before us on appeal from the order for final decree which specified the terms of the final decree in adequate terms.

The order for a final decree was not in itself a final disposition of the case.   *Churchill* v. *Churchill,* 239 Mass. 443, 445. It is the general rule that "Suits in equity are not properly before this court as of right upon any appeal except from a final decree."   *Hutchins* v. *Nickerson,* 212 Mass. 118, 120. *Forbes* v. *Tuckerman,* 115 Mass. 115, 118, 119.   *Fuller* v. *Chapin,* 165 Mass. 1.   *Worcester Board of Health* v. *Tupper,* 210 Mass. 378, 380.   *Romanausky* v. *Skutulas,* 258 Mass. 190, 192, and cases cited.   G. L. c. 214, §§ 19, 26.

That general rule, however, was changed by G. L. c. 231, §§ 96, 144.   By § 96 it was provided amongst other matters that "a party aggrieved . . . by any order decisive of the case founded upon matter of law apparent on the record in any proceeding, may appeal therefrom to the Supreme Judi-

cial Court." Section 96 was by § 144 expressly made applicable to proceedings in equity. An order for final decree of the tenor here in question was in substance and effect an order within the descriptive words already quoted from § 96. It was a ruling of law as to the decree to which the plaintiff was entitled upon the facts found by the master. It follows that the defendant rightly could appeal from such an order, and, since the case was, pursuant to a further provision of § 96, "in all other respects ripe for final disposition by the Superior Court," he could enter the case in this court. *Sullivan* v. *Roche,* 257 Mass. 166, 170. See *Samuel* v. *Page-Storms Drop Forge Co.* 243 Mass. 133, 134. The whole question at issue between the parties may be determined on this record. G. L. c. 231, § 124. It follows that the judge rightly refused to dismiss the appeal and the plaintiff's exceptions must be overruled.

The general equity practice to the effect that equity cases can come before this court as of right only by appeal from a final decree has been restored by St. 1928, c. 306. See Third Report of Judicial Council, pages 64, 65. That act, however, is not applicable to the case at bar because by its express terms it did not become operative until September 1, 1928.

The findings of the master in substance were that the land of the defendant is somewhat higher than that of the plaintiff; that there is a retaining wall on land of the defendant built partly of loose stones, no part of which at its base is on the plaintiff's land, but the stones of which in some portions are bulged and overhang land of the plaintiff and some of the stones become loose from time to time and fall on the land of the plaintiff; that the defendant maintains the roof or roofs of buildings without eaves troughs, so that rain water and snow collected thereby fall on the top of the wall or a few inches from the plaintiff's land and run onto it and in some instances fall directly upon his land, and that some rain water or water from melting snow is collected by eaves troughs from other parts of the defendant's buildings and deposited on the ground a few feet from the plaintiff's line and spreads in a fan shape and flows with the natural slope

of the ground toward the top of the wall, whence some of it goes over the face of the wall and the rest seeps through its stones onto the plaintiff's land; and that water flowing into the cellars of the plaintiff's houses comes from land of the defendant, except the natural fall of rain and snow upon the land of the plaintiff. The plain inference from the master's findings is that by far the larger part of the water flowing into the cellars of the plaintiff's houses comes from surface water artificially collected by the defendant so near the boundary line that it would inevitably flow upon the plaintiff's land. If such water is collected and deposited so near as inevitably to run upon the land of the plaintiff, that constitutes a tort; it need not be directly upon his land to give rise to a cause of action. It is not necessary further to summarize findings of the master. They are sufficient to show that the plaintiff has suffered damages from the tortious conduct of the defendant. The case at bar falls within the authority of numerous decisions. *Field* v. *Gowdy*, 199 Mass. 568. *Drake* v. *Taylor*, 203 Mass. 528. *Cochran* v. *Barton*, 233 Mass. 147. *Friedman* v. *Andreson*, 257 Mass. 107. *Lucas* v. *Byrne*, 258 Mass. 365.

No error of law is apparent in the assessment of damages. That was a pure question of fact when once it was established that by tortious acts of the defendant water flowed upon premises of the plaintiff and into the cellars of his houses. The circumstance that possibly other causes beside the conduct of the defendant may have contributed in some part to the plaintiff's injury is not decisive on this record. *Parker* v. *American Woolen Co.* 195 Mass. 591, 603, and cases collected. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. *Friedman* v. *Andreson*, 257 Mass. 107.

*Plaintiff's exceptions overruled.*
*Order for final decree affirmed.*