After a jury trial in the Central Division of the Boston Municipal Court Department, the defendant, Joseph Maldonado, was convicted of motor vehicle homicide by negligent operation. He appeals, claiming that the judge erred in denying his motion for a required finding of not guilty, and in admitting evidence at trial. We affirm.
Background. At approximately 5:30 A . M . on April 21, 2014, Debra Sarno was driving northbound on the Zakim Bridge in Boston when she experienced a flat tire on her vehicle. With no breakdown lane available to pull over into, she stopped her vehicle in the right lane and activated her hazard lights. Sarno was the sole occupant of the vehicle.
Over the next several minutes, more than twenty vehicles in the right lane merged into the left lane as they approached Sarno's vehicle to avoid a collision. This included small cars, as well as school buses, tractor trailers, and other trucks.
That morning, Maldonado was driving a sixty-foot tractor trailer carrying approximately 26,000 pounds of cargo. He drove through the O'Neill Tunnel and emerged northbound onto the Zakim Bridge, where he collided with Sarno's vehicle. Both vehicles caught fire, ultimately resulting in Sarno's death.
Discussion. 1. Negligence. To establish guilt under the motor vehicle homicide by negligent operation statute, the Commonwealth must prove "(1) operation of a motor vehicle, (2) upon a public way, (3) recklessly or negligently so as to endanger human life or safety, (4) thereby causing the death of a person." Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 137 (2006), quoting Commonwealth v. Burke, 6 Mass. App. Ct. 697, 699 (1978). Maldonado contends that the Commonwealth failed to prove his negligence. " 'A finding of ordinary negligence suffices' to establish homicide by motor vehicle ...." Angelo Todesca Corp., supra, quoting Commonwealth v. Jones, 382 Mass. 387, 389 (1981).
"[T]he evidence is sufficient to reach the jury and a motion for a required finding of not guilty is properly denied if the evidence, viewed in the light most favorable to the Commonwealth and drawing all inferences in favor of the Commonwealth, would permit a rational jury to find each essential element of the crime beyond a reasonable doubt." Commonwealth v. Merry, 453 Mass. 653, 660 (2009), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). "In considering whether the jury could find the existence of each element of the crime charged, we do not weigh the supporting evidence against conflicting evidence." Merry, supra at 660-661, citing Commonwealth v. Lao, 443 Mass. 770, 779 (2005). "Conflicting inferences that can be drawn from the evidence are for the jury to resolve." Commonwealth v. St. Louis, 473 Mass. 350, 364 (2015), citing Commonwealth v. Miranda, 458 Mass. 100, 113 (2010), cert. denied, 565 U.S. 1013 (2011).
Viewing the evidence in the light most favorable to the Commonwealth, the jury could reasonably have found that Maldonado had a clear view of the road ahead of him. The evidence demonstrates that Maldonado was able to see at least a few hundred feet in front of him, albeit in relative darkness. Although he had several seconds in which he could have employed his brakes, he failed to do so until the split second prior to hitting Sarno's vehicle. The jury could thus have found that, rather than attempting to slow down or move over, he was inattentive in the critical seconds leading up to the collision, which left him with an inadequate amount of time to switch lanes and avoid hitting Sarno's vehicle as other vehicles had done. See Barow v. Modoono, 325 Mass. 522, 524 (1950), and cases cited therein ("automobile should have been observed by the defendant, who should have taken appropriate precautions instead of proceeding, without applying his brakes, into head on collision"). Although there was testimony that Maldonado looked in his driver's side mirror to see if it was clear to change lanes, the jury could have chosen not to believe this, see Commonwealth v. Campbell, 394 Mass. 77, 83 (1985), or that he checked too late.
The evidence presented at trial was enough to warrant the jury's finding "that the defendant, without justification or excuse, had not been attentive to the road in front of him during the crucial period when his truck was approaching the victim .... In these circumstances, the jury could properly conclude, beyond a reasonable doubt, ... that the defendant was negligent." Commonwealth v. McGrath, 60 Mass. App. Ct. 685, 691-692 (2004). There was no error.
2. Reconstruction videotape. "A videotaped demonstration may be admitted in evidence provided it 'sufficiently resembles the actual event so as to be fair and informative.' " Commonwealth v. Chipman, 418 Mass. 262, 270 (1994), quoting Terrio v. McDonough, 16 Mass. App. Ct. 163, 173 (1983). Maldonado claims that the reconstruction videotape was unfairly dissimilar to the actual events at the time the incident took place, and that the dissimilarities favored the Commonwealth. "Whether the conditions were sufficiently similar to make the observation [offered by the demonstration] of any value in aiding the jury to pass upon the issue submitted to them [is] primarily for the trial judge to determine as a matter of discretion. [The judge's] decision in this respect will not be interfered with unless plainly wrong." Chipman, supra at 270-271, quoting Field v. Gowdy, 199 Mass. 568, 574 (1908).
Here, the reconstruction videotape consisted of State Trooper Joel Balducci driving the route Maldonado took in the seconds leading up to the collision. The videotape depicted the view Maldonado had of the road in front of him when he came out of the O'Neill Tunnel onto the Zakim Bridge. The videotape was taken in clear weather, and Trooper Balducci drove approximately the same speed as Maldonado had driven. Although the videotape was taken more than two years after the accident, the bridge remained unchanged during that time. The videotape was taken midday, while the accident occurred at dawn and, therefore, in different lighting conditions. However, we agree with the Commonwealth that the lighting in the reconstruction videotape favored the defendant rather than causing him any prejudice because it essentially blinded the viewer of the line of sight coming out of the tunnel for the entire portion of the videotape until the viewer emerged onto the bridge. Finally, there were no vehicles in front of Trooper Balducci's cruiser, giving him a clear view of the road, which Maldonado claims was not representative of his view because there were vehicles in front of him. Even so, the judge was within his discretion in finding that the videotape portrayed useful additional information to the fact finder as to the line of sight coming out of the tunnel onto the Zakim Bridge, and that the differences in the videotape did not prejudice Maldonado. There was no error.
Judgment affirmed.